140 N.J. Super. 273 (1976)
356 A.2d 48
PEBBLE BROOK, INC., A NEW JERSEY CORPORATION, PLAINTIFF, MR. GUTTER COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND HENRY ROLLINS, BOTH INDIVIDUALLY AND T/A M.R. CONSTRUCTION COMPANY, INTERVENORS,
v.
RICHARD T. SMITH, ET UX; KENNETH KURTZMAN, ET UX; GARY MEREDITH, ET UX, WILLIAM WIEDMAN, INDIVIDUALLY, WILLIAM FINNIGAN, ET UX; JOSEPH McCART, ET UX; JOEL RILOFF, ET UX; THOMAS GABRIEL, ET UX; RENA CERASARO, INDIVIDUALLY, DONALD FRASER, ET UX; GARY DOUGHTY, ET UX; AND NEILL READ, ET UX; DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 3, 1976.
*274 Mr. Jeffrey C. Zucker for plaintiff (Mr. Saverio R. Principato, attorney).
Mr. David A. Keyko for the intervenors.
Mr. Richard A. Barton for defendants (Messrs. Freeman, Spence & Barton, attorneys).
KING, J.S.C., Temporarily Assigned.
This is an application to dissolve certain ex parte interim restraints entered by another judge sitting in this Division on February 13, 1976. This court heard such oral testimony as was offered by the parties on February 27, 1976 and because of the novelty of the question reserved decision for the purpose of further research into the matter.
Plaintiff Pebble Brook, Inc. seeks an interlocutory retraint here enjoining defendants from picketing and distributing literature at plaintiff's development site in Washington Township, Gloucester County. Defendants are dissatisfied *275 purchasers and residents of Pennsbridge, a Pennsauken, Camden County development. Pennsbridge of Pennsauken, Inc. recently sold defendants' homes to them in the Pennsbridge project. Plaintiff's principals, Mark J. Moldoff and Carl Moldoff, are the sole officers and 100% shareholders of both Pebble Brook Inc. and Pennsbridge of Pennsauken, Inc. Defendants have instituted an action for money damages against Pennsbridge of Pennsauken, Inc., in the Law Division, Camden County. Damages are claimed for substandard construction of their homes in the Pennsbridge project, sold to them by the Moldoff interests. M.R. Construction Co., the general contractor on the Pebble Brook project in Washington Township, on February 27, 1976 intervened in this action by leave of court. M.R. Construction Co. had no pertinent relationship to the Pennsbridge project, and asserts injury to its economic rights and reputation by virtue of defendants' picketing and demonstrating at the Pebble Brook site.
In deciding this motion to dissolve the ex parte temporary restraints this court is called upon to weigh the very delicate balance between defendants' First Amendment right of freedom of expression and speech, and plaintiff's right to conduct its business free of malicious interference and intimidation. Research of counsel and the court discloses no New Jersey precedent in this situation. Plaintiff suggests that defendants' conduct is a species of economic coercion designed to embarrass its sales activities and coerce a settlement of the Law Division litigation for money damages. Defendants' spokesman, Richard T. Smith, in his testimony described a more altruistic motive, stating the purpose of the defendants' demonstrative activity "was to alert the public to the perils of home buying," especially from this developer. If one accepts defendants' position, their activity is a form of "grass roots consumerism."
The procedural principle of law involved was declared by our then highest court in Citizens Coach Co. v. Camden *276 Horse Railroad Co., 29 N.J. Eq. 299 (E. & A. 1878) as follows:
There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. [at 303]
Picketing and the expression of ideas attendant thereto is a constitutionally protected form of activity under the First Amendment and the Fourteenth Amendment to the Federal Constitution. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
The most recent expression of the United States Supreme Court in this area of freedom of expression is found in Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). The case involved peaceful distribution of leaflets accusing plaintiff real estate broker of "panic peddling activities." The Supreme Court, in an opinion by Chief Justice Burger, reversed a temporary injunction issued by the Illinois courts restraining defendant's activities. In an opinion dissolving the restraint the Chief Justice stated:
It is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication. Under Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights. Here, as in that case, the injunction operates, not to redress alleged private wrongs, but to suppress on the basis of previous publications, distribution of literature "of any kind" in a city of 18,000.
This court has often recognized that the activity of peaceful pamphleteering is a form of communication protected by the First Amendment. E.g., Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). In sustaining the injunction, however, the Appellate Court was apparently of the view that petitioners' purpose in distributing their literature was not to inform the public, but to "force" respondent to sign a no-solicitation agreement. The claim that the expressions were *277 intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. See Schneider v. State, supra; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability.
Any prior restraint on expression comes to this Court with a "heavy presumption" against its constitutional validity. Carroll v. Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325, 331 (1968); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584, 593 (1963). Respondent thus carries a heavy burden of showing justification for the imposition of such a restraint. He had not met that burden. No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court. Designating the conduct as an invasion of privacy, the apparent basis for the injunction here, is not sufficient to support an injunction against peaceful distribution of informational literature of the nature revealed by this record. Rowan v. United States Post Office Dept. 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), relied on by respondent, is not in point; the right of privacy involved in that case is not shown here. Among other important distinctions, respondent is not attempting to stop the flow of information into his own household, but to the public. Accordingly, the injunction issued by the Illinois court must be vacated.
Plaintiff relies here in part to support the continuance of the restraints on an opinion of a trial court of the State of New York, West Willow Realty Corp. v. Taylor, 23 Misc.2d 867, 198 N.Y.S.2d 196 (Sup. Ct. 1960). That case involved a factual situation somewhat similar to this one  a disgruntled home purchaser picketing a building site while he had a lawsuit for money damages pending against his vendor developer. The New York court restrained the picketing. The case is distinguishable in two respects. The New York court found no complete identity of interests between the corporation being picketed and the demonstrator's vendor corporation. In the present *278 case the record discloses that although the corporate names are different, the officers and shareholders of Pennsbridge of Pennsauken, Inc. and Pebble Brook, Inc. are identical. The New York court could make no such finding on the record before it. Additionally, that court specifically found that
The words and conduct of the defendant here are obviously designed and put into effect for the purpose of intimidating plaintiffs and coercing a settlement of the claims of and the action brought by defendant against Whitewood Estates, Inc. [at 199]
On the record before this court we cannot say that defendants' activities are obviously designed to coerce and intimidate the Moldoff interests into settling their claims for money damages, as could the New York court in the West Willow case. See discussion in Annotation, "Consumer Picketing," 62 A.L.R. 3d 227, 238 (1975).
The restraints entered on February 27, 1976 are hereby dissolved. If the parties cannot independently agree as to a mode of peaceful demonstration, limited in numbers appropriate to the site, and not involving a trespass on plaintiff's property, obstruction of access to plaintiff's development site, or impediment of the public right of way, they may appeal before this court in the forenoon on Friday, March 5, 1976 to settle the terms of the order respecting the picketing.
It must be noted that plaintiffs have an adequate remedy at law in an action for money damages if it can establish in a plenary trial a cause of action for malicious interference with prospective economic advantage or existing contractual relationship. Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950); Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 99 A.L.R. 1 (E. & A. 1934). This ruling does not preclude such a plenary action at law or suggest a conclusion on the merits of such an action. This ruling simply concludes that plaintiff is not entitled to the extraordinary remedy of an interlocutory injunction on this record in this delicate area of conflict between the right of free expression *279 and the right to conduct one's business without being subjected to conduct of others potentiating for economic harm. The court has considered the position of the intervening contractor, M.R. Construction Company, and does not find that its presence in the case alters the sensitive equitable balances against issuance of the interlocutory restraint.