**CONCERNED CONSUMERS LEAGUE, an incorporated association, on behalf of itself and its members, et al., Plaintiffs,**

v.

**William I. O'NEILL, Individually and as Circuit Court Judge for Milwaukee County, and Packer Sales Corp., d/b/a Park Furniture Mfg., Inc., Defendants.**

Civ. A. No. 71–C–601.

United States District Court,
E. D. Wisconsin.

Feb. 25, 1974.

Mark E. Wilson and David R. Taxin, Milwaukee, Wis., for plaintiffs.

Patrick J. Foster, Asst. Corp. Counsel, Milwaukee, Wis., for defendant William I. O'Neill.

Barnett W. Franks, Milwaukee, Wis., for defendant Packer Sales Corp., d/b/a Park Furniture Mfg., Inc.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This suit arises out of a consumer dispute between the plaintiffs Virginia J. Bloomberg and Mahlon D. Bloomberg and the defendant Packer Sales Corp., doing business as Park Furniture Mfg., Inc. (hereinafter "Park Furniture").

During the summer of 1971 the Bloombergs delivered to said defendant certain pieces of furniture to be reupholstered. They were dissatisfied with the manner in which the furniture was reupholstered and, being unable to resolve their conflict with Park Furniture, sought the assistance of the plaintiff Concerned Consumers League (hereinafter "League").

Plaintiffs allege that in October 1971, the League advised Park Furniture of the nature of the Bloomberg's complaint as well as other complaints they had received from customers of the company. Being dissatisfied with the response, members of the League began picketing Park Furniture and distributing leaflets (Appendix A) which detailed the Bloombergs' complaint. The plaintiffs' activities were peaceful, and the store's entrances and exists were not blocked.

Park Furniture then initiated a suit in the Circuit Court of Milwaukee County entitled "Packer Sales Corp., d/b/a Park Furniture Mfg., Inc. v. Mr. & Mrs. Mahon D. Bloomberg and Susan Hester and John Doe and Jane Doe, One through Twenty-five, operating in the name and style of Concerned Consumers League," seeking monetary damages and an injunction prohibiting the defendants in that action from engaging further in the activities complained of. Honorable Robert C. Cannon, Judge of the Circuit Court for Milwaukee County, temporarily restrained those defendants in an ex parte proceeding "from disseminating any materials or picketing the premises of the plaintiff, Packer Sales Corp. d/b/a Park Furniture Mfg. Inc." The plaintiffs moved for a change of judge, and on November 22 and 23, 1971, Honorable William I. O'Neill, also a Judge of the Circuit Court for Milwaukee County, conducted hearings on the matter. Findings of fact, conclusions of law, and an order (Appendix B) were issued restraining plaintiffs as Park Furniture had requested. Neither Judge Cannon nor Judge O'Neill found the plaintiff's activities to be nonpeaceful. Judge O'Neill did find, however,

that the League newsletter was protected by the First Amendment.

■■■ The plaintiffs initiated this present action to have the defendants enjoined from interfering with their right to peacefully picket and disseminate information. They allege that these rights are protected by the First and Fourteenth Amendments to the United States Constitution. Jurisdiction arises under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The matter is before me now on plaintiffs' motion for a preliminary injunction. Since this action was initiated under the Federal Civil Rights Act (42 U.S.C. § 1983); the rights allegedly being violated are clearly federal in nature; no state law can control the outcome, and there is no tangle of state laws involved which requires interpretation by state courts; the plaintiffs need not exhaust available state remedies. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Stradley v. Andersen, 456 F.2d 1063 (8th Cir. 1972). Nor is this court restricted from enjoining the enforcement of a state court's injunction by the federal "anti-injunction" statute, 28 U.S.C. § 2283. Actions initiated under § 1983 are excepted from that limiting statute. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

This case is directly controlled by the Supreme Court's opinion in Organization For a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). In *Austin* the petitioner was a racially integrated neighborhood organization whose stated purpose was to "stabilize" the racial ratio of an area of Chicago known as Austin. In furtherance of that goal, the Organization For a Better Austin (hereinafter "OBA") actively opposed the practices of some real estate brokers which they called "blockbusting" or "panic peddling." OBA felt that the respondent Keefe was engaging in these

practices and asked him to sign an agreement not to solicit real estate business in Austin. Keefe refused to sign the agreement, and OBA members began distributing leaflets in the City of Westchester where Keefe lived. The leaflets, which were distributed at Keefe's neighbors' homes, in a Westchester shopping center, and at his church described his alleged "blockbusting" activities. Some of the leaflets stated that the leafleting would stop when Keefe signed the no solicitation agreement, and some asked the recipient to call the respondent at his home and urge him to sign the agreement.

Keefe began an action in a Cook County Court, and the trial court enjoined OBA from pamphleteering or picketing anywhere in Westchester. The injunction was upheld on appeal because the Illinois appellate court felt OBA was invading Keefe's right to privacy.

The United States Supreme Court reversed the Illinois Court and held that OBA's activities were protected by the First Amendment and that the state had failed to satisfy the heavy burden necessary to justify any prior restraint of petitioner's protected activities.

■■■ This case cannot be materially distinguished from *Austin*. The plaintiffs here are engaging in essentially the same behavior for essentially the same reasons as the petitioners in *Austin* and are entitled to the same degree of protection. In his findings, Judge O'Neill stressed what he felt was the plaintiff's coercive motivation. The Court in *Austin* specifically dealt with that issue:

" * * * The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. [Citations omitted.] Petitioners were engaged openly and vigorously in mak-

ing the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability." 402 U.S. at 419, 91 S.Ct. at 1578.

Nor can the fact that business activities are at issue insulate the defendants from the First Amendment. While commercial speech, such as advertising, is generally not protected by the First Amendment, see Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), informational picketing about business practices is protected. Organization For a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971).

> "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity. * * * No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court. * * * " 402 U.S. at 419, 92 S.Ct. at 1578.

The case for an injunction by the state was stronger in *Austin* because the privacy of respondent's home was at stake. The right to be unassaulted in the privacy of one's home certainly stands on a higher plain than the right to engage in business activities. Cf. Stanley v. Georgia, 397 U.S. 577, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

■ Developing concepts of protected activities under the First Amendment prohibit the state from interfering with the plaintiffs' activities. Initially, there is a strong presumption of constitutional invalidity of any state action which places a prior restraint on protected means of expression. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct.

631, 9 L.Ed.2d 584 (1963); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L. Ed. 1357 (1931). The right to distribute pamphlets and leaflets is afforded constitutional protection. In Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938), the United States Supreme Court held as follows:

> "The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. * * * The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion. * * * "

Picketing is also a protective form of expressive behavior. Police Department of Chicago v. Mosley, 408 U.S. 92, 99, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

■ The state may under some circumstances place reasonable restrictions on protected modes of expression, but the restriction can never be justified by the content of the expression.

> " * * * But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. * * * " Police Department of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290 (1972).

■ I find that the state court's injunction in this case was issued in response to the plaintiffs' message. The order prohibits the plaintiffs from conveying their message because of what the state court feels is an undesirable effect of the message, i. e., pressuring Park Furniture to resolve a consumer dispute. Since the injunction prohibits the plaintiffs from delivering the content of their message to the public rather than reasonably restricting the time and means of expression, it cannot withstand the present constitutional challenge. See Kalven, The Concept of the Public Forum: Cox v. Louisiana, 1965 Sup.Ct.Rev. 29, quoted in *Mosley,* supra, 408 U.S. at 99, 92 S.Ct. at 2286.

Recent developments in First Amendment law have emphasized that expression about matters of public concern are entitled to protection. In New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964), the Supreme Court seriously limited the applicability of libel laws to the press for articles they have published because of the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open * * *." In Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L. Ed.2d 456 (1967), the Court decided that the press could not be held liable for printing false information about a "newsworthy matter" without a showing that the story was published with knowledge that it was false or a reckless disregard for the truth. Justice Fortas, though dissenting in *Hill*, stated:

"* * * I have no hesitancy to say, for example, that where political personalities or issues are involved or where the event as to which the alleged invasion of privacy occurred is in itself a matter of *current public interest*, First Amendment values are supreme and are entitled to at least the types of protection that this Court extended in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). * * *" (Emphasis added.) 385 U.S. at 415, 87 S.Ct. at 556.

The Ninth Circuit Court of Appeals has capsulized the developments in this area of the law in United Medical Laboratories v. Columbia Broadcasting System, 404 F.2d 706, 710 (9th Cir. 1968):

"Of the most relevance here, however, is the fact that the opinion [St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)] took occasion to reiterate, as the other cases had done (*New York Times, Garrison, Rosenblatt, Walker, Butts, Hill* and *Pickering*), the fundamental basis on which all of the Court's First Amendment thrusts into the various fields thus far presented has rested— the right of the public to have an interest in the matter involved and its

right therefore to know or be informed about it."

■ The expression being suppressed in this case concerns a matter of public interest in America. The growth of "consumerism" in the United States is a matter of common knowledge. Members of the public have recognized their roles as consumers and through concerted activities, both private and public, have attempted to improve their relative positions vis-a-vis the supplies and manufacturers of consumer goods. They clearly have an interest in matters which affect their roles as consumers, and peaceful activities, such as plaintiffs', which inform them about such matters are protected by the First Amendment.

Three factors must be considered. First, the most seriously victimized consumers are those least capable of bearing that burden—the poor. Second, advertising provides a one-way street for the suppliers of consumer goods to inform the consuming public about their goods or services. As a general rule, consumers are not able to counter any claims through the mass media. Finally, the institutionalized remedies available to victimized consumers do not appear to be adequate.

The dilemma for the poor is described by Caplovitz as follows:

"[The low-income consumer] is trained by society [and his position in it] to want the symbols and appurtenances of the 'good life' at the same time that he lacks the means needed to fulfill these socially induced wants. * * * [The poor] tend to lack the information and training needed to be effective consumers in a bureaucratic society. * * * These characteristics of the low-income consumer—his socially supported want for major durables, his small funds, his poor credit position, his lack of shopping sophistication—constitute the conditions under which durables are marketed in low-income areas." D. Caplovitz, The Poor Pay More (2d ed., 1967).

One way to change these "conditions" is to allow consumers to inform them-

selves about the business practices of particular merchants. The method of expression used by the plaintiffs in this case is probably the most effective way, if not the only way, to inform unsophisticated consumers, i. e., by direct contact at the particular place of business.

It has been pointed out that society's interest in ending the exploitation of low-income consumers is not based solely on the moral implications of the exploitation, and that the public has paid a high price for the devious practices of certain merchants. "The riots in Harlem, Watts and Philadelphia resulted in part from the exploitation of the poor consumer; the arson and looting was directed almost exclusively at those businesses associated with sharp selling practices, excessive prices, exorbitant credit charges, or poor quality merchandise and service." Note, Consumer Legislation and the Poor, 76 Yale L.J. 745, 746 (1967).

I do not find or imply that the defendant in this case has engaged in illegal or unethical sales practices. But these practices do exist and society is paying a high price, both practically and morally, because of their existence. There is, therefore, a strong presumption that any peaceful expression which is designed to educate consumers enjoys the constitutional protection of the First Amendment.

In addition, peaceful informational activities by consumer organizations must be protected because sellers have access to consumers via advertising. The sellers of consumer goods inundate the consuming public with advertisements which extol the virtues of their goods or services through the mass medias. Much advertising is not even meant to inform the public about a particular product but to produce an irrational response in individuals that the product will satisfy some psychological need. See Comment, Psychological Advertising: A New Area of FTC Regulation, 1974 Wis.L.Rev. 1097, 1097–1098 (1972). The Government has, of course, banned false advertising and required

the media to present opposing views when it accepts advertisements about matters which affect public health. Banzhaf v. Federal Communications Commission, 132 U.S.App.D.C. 14, 405 F.2d 1082 (1968). However, in light of the magnitude and nature of advertising in America, the governmental limits on advertising are certainly not pervasive enough to justify any limitations on the consuming public's right to inform each other about matters of common concern in a peaceful manner.

Finally, consumers lack adequate remedies when they are victimized by those who sell services and goods. They generally lack the sophistication or knowledge to use small claims courts, and in some states it appears that small claims courts are used largely to the consuming public's disadvantage. This problem is, of course, aggravated when the consumers are poor. See generally: Note, The Prosecution and Intimidation of the Low-Income Litigant as Performed by the Small Claims Court in California, 21 Stan.L.Rev. 1657 (1969). Even those who are aware of the small claims courts seldom are willing to suffer the aggravation and expense of a lawsuit for the amounts involved in a consumer dispute and the amounts in most cases certainly prohibit the retention of an attorney and pursuit in regular courts.

For all of the above reasons, the plaintiffs' motion for a preliminary injunction must be granted. This case is directly controlled by the United States Supreme Court opinion in *Austin*, supra, and even if it were not, the injunction in issue restrains expressive behavior because of its content, which is in violation of the First Amendment. Furthermore, the plaintiffs are expressing themselves about a matter of public concern and that cloaks their activities with constitutional protection. The American public has a right to be informed, and to inform each other, about matters that affect their status as consumers. Short of a showing that the message is being presented in a nonpeaceful manner or is false and being distributed with knowl-

edge of the falsity or reckless disregard for the truth, I do not believe that the state may interfere with the type of expressive behavior at issue in this case.

It is therefore ordered that plaintiffs' motion for a preliminary injunction be and it hereby is granted.

It is further ordered that the defendants are enjoined from restraining, or attempting to have restrained, plaintiffs' informational picketing and distribution of leaflets at the location of Park Furniture's place of business unless such activity is conducted in a non-peaceful manner.

## APPENDIX A

# SATISFACTION NOT GUARANTEED AT PARK FURNITURE !!!

When Mr. & Mrs. Bloomberg, 5326 N. 63rd St. took their furniture to be reupholstered at Park Furniture on June 18, they expected no less than an excellent job. The price charged for recovering their sofa and two chairs was a total of $431 of which $100 has been paid so far

When Mr. & Mrs. Bloomberg went to pick up their newly (and Expensively) reupholstered furniture, they found the following things were wrong:

1. Chairs and sofa had been overstuffed; furniture no longer had its original shape
2. Welting was sewn on unevenly on all pieces
3. Cushions overhang on chairs
4. The sofa padding has humps in the back
5. The cover trim doesn't cover
6. There are two small holes in the sofa cushion
7. Material in sofa and chair cushions was pieced as the result of sewing error (zippers were put in by mistake)

Is this a $431 job?

Mr. Johnson, owner of Park Furniture, says he doesn't want to talk to Mr. & Mrs. Bloomberg because he feels they are "unreasonable".

Concerned Consumers League feels that the upholstering should be done to Mr. & Mrs. Bloomberg's satisfaction or that their money and furniture should be returned.

What's your opinion

If you have a consumer problem contact:    CONCERNED CONSUMERS LEAGUE
524 W. National Avenue
645-1808

We are a self-help group dedicated to ACTION on behalf of Milwaukee area consumers in which you will be involved in solving your own complaint and help others who helped you.

## APPENDIX B

State of Wisconsin                    Circuit Court                    Milwaukee County
                                      Civil Division

Packer Sales Corp., d/b/a
Park Furniture Mfg., Inc.,
                    Plaintiff,

                    vs.                              Case No. 394–934

Mr. & Mrs. Mahon D. Bloomberg and                    Nov. 26, 1971
Susan Hester and John Doe and Jane
Doe, One through Twenty-five, operating
in the name and style of Concerned Con-
sumers League,

                    Defendants.

———◆———

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

The order to show cause of the plaintiff why a temporary injunction should not be issued restraining the defendants during the pendency of this action from disseminating materials referred to in the complaint and from picketing the premises of the plaintiff, Packer Sales Corp., d/b/a Park Furniture Mfg., Inc., and the order to show cause of the defendants, Mr. and Mrs. Mahon D. Bloomberg and Susan Hester, why an order should not be made vacating the temporary restraining order heretofore entered on the 11th day of November, 1971, came on to be heard before this court on the 22nd and 23rd of November, 1971; and after hearing the proofs of the parties, and after considering the allegations of the complaint and the affidavit attached to the plaintiff's complaint in support of a motion for temporary injunction and the affidavit of Mr. and Mrs. Mahon D. Bloomberg and Susan Hester in support of the defendants' motion to vacate the restraining order heretofore entered herein, and after hearing the arguments of counsel, and being fully advised in the premises, I, the judge before whom this matter was heard, do decide and find as:

### FINDINGS OF FACT

(1) That the plaintiff is a corporation having its principal place of business at 3218 West Fond du Lac Avenue, in the City and County of Milwaukee, state of Wisconsin, and is engaged in the business of reupholstering furniture;

(2) the defendants, Mr. and Mrs. Mahon D. Bloomberg, are residents of Milwaukee County, state of Wisconsin, and on the 18th day of June, 1971, delivered certain items of furniture to the plaintiff corporation for the purpose of having the same reupholstered at an agreed price of $431.00, of which $100.00 had been deposited;

(3) that the defendant, Concerned Consumers League, is a non-profit direct action consumers group;

(4) that Susan Hester is a resident of Milwaukee County, state of Wisconsin, and is the sole paid employee of the Concerned Consumers League, and describes her position as "a consumers' advocate;"

(5) that the defendants Bloomberg were dissatisfied with the method and manner in which the plaintiff had upholstered their furniture and sought the aid and assistance of the Concerned Consumers League for the purpose of obtaining an adjustment of their claim which would be most beneficial and satisfactory to the defendants Bloomberg;

(6) that the performance of the agreement between the plaintiff and the defendants Bloomberg, with respect to the

workman-like manner in which the upholstering of the furniture of the defendants Bloomberg, is in dispute;

(7) that the defendants sought, by coercive and compulsive action, to force the plaintiff into a settlement of the Bloomberg claim without a showing of adequate basis that the upholstering was not in conformity with the agreement between the plaintiff and the defendants Bloomberg;

(8) that on three occasions the defendants picketed the business place of the plaintiff without legal justification therefor;

(9) that the purpose of the picketing by the defendants was to compel the plaintiff to settle what appears to be a legal dispute between the plaintiff and the defendants Bloomberg solely upon a basis most favorable to the Bloombergs without giving due consideration to the rights of the plaintiff;

(10) that the allegation contained in paragraph 6 of the plaintiff's complaint, that on the 12th day of October, 1971, the defendants distributed adjacent to the premises of the plaintiff, handbills attacking the workman-like manner in which the plaintiff reupholstered the furniture of the defendants Bloomberg, has not been controverted by answer or affidavit of the defendants, and, therefore, for the purpose of this proceedings, is deemed to be a conceded fact;

(11) that the monthly newsletter sent out by the Concerned Consumers League is in the nature of a newspaper and is safeguarded by the First Amendment of the Federal Constitution relating to freedom of the press;

(2) that if the picketing and display of signs or placards setting forth the dispute between the plaintiff and the defendants Bloomberg, and the distribution of pamphlets relating to such dispute, were permitted to continue, the plaintiff will suffer irreparable damage, and that the plaintiff has no adequate remedy at law;

and I find as:

## CONCLUSIONS OF LAW

(1) That the above-named defendants, and each of them, their employees, servants, agents, confederates, associates, if any, and all officers and members of the Concerned Consumers League, be temporarily enjoined and restrained:

(a) From directly or indirectly establishing and maintaining or causing to be established or maintained any pickets or patrols, or carrying or displaying any picket signs relating to the Bloomberg dispute, or from displaying or causing to be displayed at or near the business place of the plaintiff any signs or placards relating to the Bloomberg dispute;

(b) from directly or indirectly distributing or causing to be distributed handbills or pamphlets containing material relating to the Bloomberg dispute.

(2) That the defendant, Concerned Consumers League, is not restrained from making reference to the Bloomberg dispute in the monthly newsletter of the defendant, Concerned Consumers League, sent to its members.

## ORDER

Upon the basis of the foregoing findings of fact and conclusions of law this court makes the following order:

It is hereby ordered and adjudged that the named defendants, and each of them, their employees, servants, agents, confederates, associates, if any, and the members of the Concerned Consumers League, during the pendency of this action, are hereby temporarily enjoined and restrained:

(1) From engaging in, promoting or inducing picketing at or near the premises of the business establishment of the plaintiff, located in the city and county of Milwaukee, state of Wisconsin.

(2) From directly or indirectly carrying or displaying, or causing to be carried or displayed, any picket signs relating to the Bloomberg dispute at or near the plaintiff's place of business located in the city and county of Milwaukee, state of Wisconsin.

(3) From directly or indirectly engaging in or promoting or inducing the distribution of handbills or pamphlets relating to the Bloomberg dispute; and

It is further ordered that the restraining order heretofore made and entered by this court, which relates to the newsletter of the Concerned Consumers League, sent by such league to its members, be and the same is hereby vacated.

Dated, at Milwaukee, Wisconsin, this 26th day of November, 1971.

BY THE COURT

_____
Circuit Judge

The above findings of fact, conclusions of law and order were prepared by me, and a copy thereof was caused to be duly forwarded to the attorneys for the respective parties to this action by regular mail.

_____
Circuit Judge