[No. E008024. Fourth Dist., Div. Two. Nov. 15, 1991.]

PARADISE HILLS ASSOCIATES, Plaintiff and Respondent, v.
BRENDA PROCEL, Defendant and Appellant.

1530

COUNSEL

Michael Leight for Defendant and Appellant.

Nebenzahl & Kohn, Randall S. Leff and Gerald S. Frim for Plaintiff and Respondent.

OPINION

**DABNEY, Acting P. J.**—Brenda Procel (Procel) appeals from a preliminary injunction which restricts certain speech and activities. She contends that the injunction improperly interferes with her First Amendment rights.

### FACTS

Paradise Hills Associates (PHA) is the owner and developer of Paradise Hills Subdivision (Paradise Hills) in Colton. Paradise Hills consists of three phases. Phase 1 contains 39 single family houses, all of which have been sold; phases 2 and 3 are being built and sold and will eventually contain 70 houses. PHA maintains a sales office and model houses within Paradise Hills to solicit buyers for houses in phases 2 and 3.

In March 1989, Procel and her husband bought a house from PHA in Phase 1. Procel claims that the workmanship and materials in her house were

inferior, and the house was not constructed and completed according to her contract with PHA. PHA denies Procel's claims. However, through its contractor, D.E.H.H. Corp., PHA performed substantial reconstruction, repairs and upgrading on her house.

Procel posted various signs on her house to call attention to her dispute with PHA.[1] At various times, up to 20 other homeowners had posted similar signs on their houses in Phase 1. Procel spoke with newspaper reporters about her house, and a local newspaper published an article about the situation. PHA alleges that Procel and other homeowners distributed leaflets in front of PHA's model home on two weekends, spoke to prospective customers there urging them not to buy from PHA, and displayed large signs which disparaged PHA.

Based on these activities, PHA filed a complaint against Procel for declaratory relief, damages for interference with prospective economic advantage and conspiracy to interfere with prospective economic advantage, and injunctive relief for interference and conspiracy. PHA did not allege that any of Procel's statements were false; however, PHA alleged that her statements were made with the intention to injure PHA in its business of selling houses.

To support its application for a temporary restraining order and preliminary injunction, PHA submitted the declarations of (1) a real estate sales person affiliated with the company which provides marketing and real estate sales services to PHA, (2) a general partner of PHA, (3) the contractor responsible for the construction of the houses in Paradise Hills, and (4) an attorney for PHA. The declarations listed Procel's activities and identified the damages allegedly caused by those activities. The declarations also asserted that the City of Colton had created special arbitration procedures for dissatisfied customers in Paradise Hills, but Procel had declined to participate in those procedures.

The trial court granted a temporary restraining order. Following a hearing, the trial court later entered a preliminary injunction which provides: "IT IS HEREBY ORDERED that defendants and their agents, servants, employees, and

---

[1]Procel admits she posted the following signs on her house:

(1) "I bought a $200,000.00 Fixer Upper. My House Leaks and No One Gives a Damn ($ - international 'NO PH' symbol).

(2) "We moved to Paradise Hills But we Live in Hell (Unhappy face symbol - international 'No Paradise Hills' symbol).

(3) "Unhappy Homeowner - Ask Me Why (Unhappy face symbol).

(4) "BEWARE: YOU HAVE NOW ENTERED THE 'PARADISE ZONE' HONESTY?? QUALITY?? PROMISES?? LUXURY??? HEARTBROKEN FOR SURE. (Unhappy face symbol - international 'No PH' symbol)."

all persons under their direction in active concert and participation with them, shall be and hereby are enjoined, during the pendency of this action, from:

"(a) Making any statement, or written communication, attributing to Phase 2 or 3 of the Paradise Hills Subdivision any alleged defect or problem relating to construction or repair of any home in Phase 1;

"(b) Preventing or hindering any person from visiting the Paradise Hills Subdivision sales office or any of the Paradise Hills Subdivision model homes;

"(c) Entering the sales office of Paradise Hills Associates . . . , located on Lot 22 of Phase 1 of the Paradise Hills Subdivision;

"(d) Expressing, either verbally or in writing, to members of the public, in general, any form of conclusion, assumption, presumption, or generalization, regarding PHA, PHA's business, the Paradise Hills Subdivision, or homes for sale in Phases 2 and 3 of the Paradise Hills Subdivision; provided, however, that defendant is not restricted from reciting facts as they may relate to specific problems on defendant's property;

"(e) Being present within 150 feet of the sales office located on Lot 22 of Phase 1 of the Paradise Hills Subdivision; provided, however, that defendant is not restricted from the lawful use of public property within that' radius for the purpose of ingress and egress."[2]

Additional facts are set forth in the discussion of the issues to which they pertain.

DISCUSSION

I

*Law of the Case*

Following the issuance of the preliminary injunction, Procel applied for a writ of mandate or prohibition. PHA contends that this court's denial of Procel's application established law of the case which determines Procel's rights on appeal.

---

[2]The injunction is not included in the record on appeal, except in the form of the trial court's minute order. The terms of the minute order are essentially the same as those incorporated in the injunction, which was included as exhibit V to Procel's petition for writ of prohibition. (No. E008034.)

■ An order on an application for an extraordinary writ does not establish law of the case unless the court issues an opinion or statement of reasons which addresses the merits of the appeal. "[A] summary denial 'cannot properly be deemed a conclusive decision on the merits' [citation] because there are many possible grounds for denial other than the merits." (*Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748, 755-756 [134 Cal.Rptr. 52].)

This court's order stated, "The petition for writ of mandate or prohibition is denied *as petitioner has shown no need for extraordinary relief.* [¶] ■ While it is true that equity will not normally restrain a libel [citation] the rule is not without exception, especially where trade libel is involved. [Citations.] The trial court's order appears to have been carefully crafted to balance petitioner's right to freedom of expression against real party's interest in preventing injurious falsehoods. As the restriction on petitioner's right to free speech, if any, appears to be minimal, *we decline to intervene.*" (Italics added.)

■ Because PHA did not allege trade libel in its complaint and does not claim that any of Procel's statements were false, our order cannot reasonably be construed as reaching the merits of the appeal. Rather, the order addresses the test for the appropriateness of extraordinary relief: whether the remedy of appeal is deemed adequate. (Code Civ. Proc., § 1086; *Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1227 [256 Cal.Rptr. 671].)

■ Moreover, for an appellate judgment to be binding, at least two justices must concur. (Cal. Const., art. VI, § 3; *People* v. *Castellano* (1978) 79 Cal.App.3d 844, 862 [145 Cal.Rptr. 264].) The earlier order, signed by a single justice, cannot establish law of the case.

## II

### Standard of Review

■ The grant of a preliminary injunction does not determine the merits of the controversy. (*Baypoint Mortgage Corp.* v. *Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 823 [214 Cal.Rptr. 531].) However, a trial court may order a preliminary injunction if the plaintiff shows that the status quo should be maintained pending a trial of the merits. (*Cox Cable of San Diego, Inc.* v. *Bookspan* (1987) 195 Cal.App.3d 22, 25 [240 Cal.Rptr. 407].)

■ To issue a preliminary injunction, the trial court must consider two interrelated factors. First, the court must evaluate whether the plaintiff is

likely to prevail on the merits at trial. Second, the court must weigh the interim harm to the plaintiff if the injunction is denied against the harm to the defendant if the injunction is issued. (*Cox Cable of San Diego, Inc.*, *supra*, 195 Cal.App.3d at p. 25.)

■ On appeal, we "merely determine whether the trial court 'exceeded the bounds of reason' in determining [plaintiff] has a 'reasonable probability of prevailing on the merits' and that the 'balance of hardships' favors [plaintiff]. We can reverse the order only if appellant demonstrates an abuse of discretion in resolving these two issues. [Citation.]" (*Baypoint, supra*, 168 Cal.App.3d at p. 824.)

III

*Balance of Hardships*

We first examine the relative hardship to the parties. ■ A preliminary injunction is justified when the trial court determines that a greater injury will result to the moving party if the injunction is denied than will result to the opposing party if the injunction is granted. (See *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761 [439 P.2d 889].)

*1. PHA's Prospective Hardship.* ■ PHA's prospective hardship is economic: sales of the houses it constructs are allegedly deterred by Procel's activities. PHA also contends that Procel does not have the resources to pay damages. ■ The asserted insolvency of the defendant is not an independent ground for an injunction, but may be considered in determining whether damages provide an adequate remedy. (*West Coast Const. Co. v. Oceano Sanitary Dist.* (1971) 17 Cal.App.3d 693, 700 [95 Cal.Rptr. 169].) California courts have issued injunctions against unlawful interference with business rights when the plaintiff proves that damages will not afford an adequate remedy. (*California G. C. Bd. v. California P. Corp.* (1935) 4 Cal.App.2d 242, 244 [40 P.2d 846].)

*2. Interference With Procel's First Amendment Rights.* ■ In contrast, the hardship to Procel from an injunction is the potential for interference with her freedom of speech. ■ "[T]he deprivation of first amendment rights for even minimal periods constitutes irreparable harm in the context of an action for injunctive relief." (*Great Western Cities, Inc. v. Binstein* (N.D.Ill. 1979) 476 F.Supp. 827, 835.) A party seeking to justify a prior restraint on speech carries a heavy burden of justifying such restraint. (*Organization for a Better Austin v. Keefe* (1971) 402 U.S. 415, 419 [29 L.Ed.2d 1, 5-6, 91 S.Ct. 1575].) A preliminary injunction is a prior restraint.

(*Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116].) ▆▆ Procel expressed her views through picketing, leafleting and posting signs. As we discuss below, each of these forms of communications is entitled to First Amendment protection.

*3. Protected Activities.* In *Linmark Associates, Inc.* v. *Willingboro* (1977) 431 U.S. 85 [52 L.Ed.2d 155, 97 S.Ct. 1614], the court declared that a local ordinance which banned "For Sale" signs on private property was an unconstitutional prior restraint on speech. The court held that, despite the goal of promoting stable, racially integrated housing which the ordinance was adopted to address, "the First Amendment disabled the [city] from achieving its goal by restricting the free flow of truthful information." (*Id.*, at p. 95 [52 L.Ed.2d at p. 163].)

The United States Supreme Court has likewise limited the use of prior restraints against distributing leaflets. (*Organization for a Better Austin, supra,* 402 U.S. 415.) In that case, defendants peacefully distributed leaflets accusing the plaintiff, a real estate broker, of "panic peddling activities."

The Supreme Court stated, "This Court has often recognized that the activity of peaceful pamphleteering is a form of communication protected by the First Amendment. [Citations.]" (*Organization for a Better Austin, supra,* 402 U.S. at p. 419 [29 L.Ed.2d at p. 5].) The court continued, "The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. [Citation.] Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability.

"Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity. [Citations.] Respondent thus carries a heavy burden of showing justification for the imposition of such a restraint. He has not met that burden. *No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court.*" (402 U.S. at p. 419 [29 L.Ed.2d at pp. 5-6], italics added.)

*4. Invalidation of Prior Restraints in Similar Cases.* We have found no California case, and the parties have cited none, which involved facts similar to those before us. However, courts in other jurisdictions, relying on *Linmark*

and *Organization for a Better Austin* have restricted the use of injunctions in cases factually indistinguishable from those of the present case.

In *Zimmerman* v. *D.C.A. at Welleby, Inc.* (Fla.Dist.Ct.App. 1987) 505 So.2d 1371, occupants of condominium units picketed, displayed signs, and talked to potential customers for other units. The picketers contended that their activities were directed toward convincing the developers to make necessary repairs on their units. (*Id.*, at p. 1372.) The court reversed those portions of a preliminary injunction which "prohibit[ed] peaceful picketing and the displaying of signs, posters or other graphic material." (*Id.*, at p. 1376.)

In *Pittman* v. *Cohn Communities, Inc.* (1977) 240 Ga. 106 [239 S.E.2d 526], disgruntled homeowners placed signs in their yard stating, " 'BEFORE YOU BUY IN SUNWOOD TALK TO THIS DISSATISFIED OWNER.' " (239 S.E.2d at p. 527.) The developer of the Sunwood subdivision filed a complaint for an injunction, claiming that the defendants acted willfully and maliciously with the intention of injuring its business. The lower court granted an injunction, but the Georgia Supreme Court reversed, explaining, "The placing of this sign on the appellants' property is a form of communication entitled to constitutional protection under the First Amendment . . . ." (*Id.*, at p. 528, citing *Organization for a Better Austin* v. *Keefe, supra*, 402 U.S. 415 and *Linmark Associates, Inc.* v. *Willingboro, supra*, 431 U.S. 85.)

In *Pebble Brook, Inc.* v. *Smith* (1976) 140 N.J.Super. 273 [356 A.2d 48], dissatisfied purchasers of homes in a development built by the plaintiff picketed and distributed literature at a development site. The plaintiff characterized these activities as "a species of economic coercion designed to embarrass its sales activities and coerce a settlement of [pending civil] litigation for money damages." (356 A.2d at p. 49.) The defendants, in contrast, explained their purpose was " 'to alert the public to the perils of home buying,' especially from this developer." (*Ibid.*) The court denied an injunction, citing *Organization for a Better Austin, supra*, 402 U.S. 415. However, the court directed the parties to attempt to agree "as to a mode of peaceful demonstration, limited in numbers appropriate to the site, and not involving a trespass on plaintiff's property, obstruction of access to plaintiff's development site, or impediment of the public right of way, . . . ." (356 A.2d at p. 51.)

In a fourth case, a consumers' group brought a federal Civil Rights Act action after a state court enjoined the group's leafleting and picketing of a business. (*Concerned Consumers League* v. *O'Neill* (E.D.Wis. 1974) 371 F.Supp. 644.) Two customers who had their furniture reupholstered at Park Furniture Mfg., Inc. (Park) were dissatisfied with the results. They could not

resolve their dispute with Park and enlisted the aid of the consumers' group. The group was also unable to obtain redress from Park, so they began picketing Park and distributing leaflets which described the customers' complaint. (*Id.*, at p. 645.) The federal court ruled that the case was "directly controlled" by *Organization for a Better Austin, supra,* 402 U.S. 415.) (*Concerned Consumers League, supra,* 371 F.Supp. at p. 646.)

In yet another case, a woman carried signs and displayed signs on a car in front of a doctor's office indicating that the doctor had charged an exorbitant fee to set a broken finger. (*Stansbury v. Beckstrom* (Tex.Civ.App. 1973) 491 S.W.2d 947 [62 A.L.R.3d 222].) The doctor contended that the signs were false and libelous. The court nevertheless denied an injunction, citing *Organization for a Better Austin, supra,* 402 U.S. 415. (*Stansbury, supra,* 491 S.W.2d at pp. 948-949.)

PHA relies on the case of *Martin v. Reynolds Metals Company* (D.Ore. 1963) 224 F.Supp. 978 to support the injunction. In *Martin,* a landowner posted a billboard next to the highway adjacent to the plaintiff's property. The billboard stated, " 'THIS RANCH IS CONTAMINATED. [¶] 831 CATTLE KILLED IN PAST SIX YEARS [¶] FLUORIDE *POISON* FROM REYNOLDS METAL CO. [¶] KILLS OUR CATTLE . . . ENDANGERS HUMAN HEALTH [¶] CONTROLS MUST BE ENFORCED [¶] THIS STATEMENT PAID FOR BY PAUL R. MARTIN.' " (*Id.*, at p. 979.)

The *Martin* court found that the statements on the sign were false and were libelous per se. The court enjoined the sign, explaining that its message dealt only with Martin's private concerns and the controversy between the parties, and Martin's purpose in posting the sign was to compel Reynolds to comply with Martin's demands. The court stated, "Such conduct is not a lawful exercise of free speech under the Federal Constitution and is indeed the very type of conduct which equity is well-equipped and ought to prohibit and protect against." (*Martin, supra,* 224 F.Supp. at p. 985.)

The *Martin* decision predated the United States Supreme Court's decisions in *Organization for a Better Austin, supra,* 402 U.S. 415 and *Linmark, supra,* 431 U.S. 85. To the extent *Martin* is inconsistent with these decisions, *Martin* cannot be considered good law. Moreover, the *Martin* court held that a *libelous* statement which dealt solely with private concerns and which interfered with prospective business advantage could be enjoined. A libelous statement is, by definition, false. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 572 [264 Cal.Rptr. 883].) PHA does not allege that Procel made any false statements; *Martin* thus does not support PHA's position.

 We conclude that the balance of hardships does not support the grant of the preliminary injunction. The injunction may still be upheld, however, if supported by a strong likelihood of PHA's success on the merits. (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1227-1228 [240 Cal.Rptr. 829, 743 P.2d 889].)

## IV

### *Likelihood of Success on the Merits*

 Procel notes that PHA bases its complaint solely on her alleged intent to harm its business interests; it does not allege that her statements were false. Procel asserts that under the First Amendment, a cause of action for intentional interference with prospective economic advantage[3] may not be based solely on true statements made by the defendant.

PHA argues that Procel is not entitled to First Amendment protections because (1) she is not a media defendant, (2) she is not accused of publishing an injurious falsehood, (3) her speech involves solely private issues rather than matters of public concern and (4) her conduct of picketing and demonstrating is not protected speech.

 Recent court decisions have made it clear that First Amendment doctrines apply to all causes of action based on the alleged injurious falsehood of a statement, including the torts of intentional interference with prospective economic advantage and trade libel. (*Blatty* v. *New York Times Co.* (1986) 42 Cal.3d 1033, 1044-1045 [232 Cal.Rptr. 542, 728 P.2d 1177]; *Leonardini, supra*, 216 Cal.App.3d at p. 576; *Hofmann Co.* v. *E. I. Du Pont de Nemours & Co.* (1988) 202 Cal.App.3d 390, 402-403 [248 Cal.Rptr. 384].)

In *Hofmann*, employees of a toxic chemical plant criticized a proposed housing development which was to be constructed next to the plant. The employees contended that toxic chemical releases from the plant posed a health hazard. (*Hofmann, supra*, 202 Cal.App.3d at p. 396.) The trial court sustained a demurrer to the developers' complaint for intentional interference

---

[3]"The elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 330 [216 Cal.Rptr. 718, 703 P.2d 58].)

with prospective economic advantage, and the appellate court affirmed. (*Id.,* at p. 408.)

The *Hofmann* court followed *Blatty, supra,* in which the California Supreme Court "put a new gloss on California business tort law" (*Hofmann, supra,* 202 Cal.App.3d at p. 402) by repudiating the prior view that "torts involving intentional interference could be accomplished by speech that would ordinarily be protected under the First Amendment, i.e., 'by means otherwise lawful.' [Citation.]" (*Ibid.*) The *Blatty* court held "that the First Amendment necessarily comes into play when a media defendant is accused of publishing false statements that damage business interests." (*Hofmann, supra,* 202 Cal.App.3d at p. 402.) ██ █ The *Hofmann* court interpreted *Blatty* as barring a cause of action for intentional interference with prospective economic advantage based solely on true statements of fact or opinion.[4]

*1. Nonmedia Defendant.* PHA argues that *Blatty* does not apply because Procel is not a media defendant, and *Blatty* concerned freedom of the press. In response to a similar challenge in *Hofmann,* the court stated that it was "beside the point" that the defendants were not members of the media. (*Hofmann, supra,* 202 Cal.App.3d at p. 407, citing *Miller* v. *Nestande* (1987) 192 Cal.App.3d 191, 198-200 [237 Cal.Rptr. 359, 62 A.L.R.4th 301].) As the court in *Kahn, supra,* 232 Cal.App.3d 1599 stated, "[M]embers of the media have 'no special privilege to invade the rights and liberties of others.' [Citations.]" (*Id.,* at p. 1607, fn. 3.)

Moreover, although the *Blatty* court dealt with a press defendant, the language of the court's decision is sweeping. The decision refers not only to freedom of the press, but also to freedom of expression and free speech. (*Blatty, supra,* 42 Cal.3d at pp. 1043-1045.)

Finally, the United States Supreme Court has long recognized that the right to distribute pamphlets and leaflets is afforded constitutional protection equivalent to that of freedom of the press: "The liberty of the press is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets. . . . The press in its historic connotation comprehends every

---

[4]The *Hofmann* court further concluded that no cause of action could be based on intentional injury to business interests through opinions, even if the opinions were "dishonest." (*Hofmann, supra,* 202 Cal.App.3d at p. 407.) This portion of the *Hofmann* opinion was called into question when the Supreme Court rejected a categorical exemption for opinions from the reach of defamation law. (*Milkovich* v. *Lorain Journal Co.* (1990) 497 U.S. 1 [111 L.Ed.2d 1, 110 S.Ct. 2695]; see *Kahn* v. *Bower* (1991) 232 Cal.App.3d 1599, 1606-1608 [284 Cal.Rptr. 244].) However, PHA did not allege that Procel expressed opinions she did not in fact hold or that her opinions were not factually based. *Hofmann* has not been challenged as to its conclusion that true statements cannot form the basis of the tort of interference.

sort of publication which affords a vehicle of information and opinion." (*Lovell* v. *Griffin* (1938) 303 U.S. 444, 452 [82 L.Ed. 949, 954, 58 S.Ct. 666].) Thus, *Blatty* cannot be distinguished on the basis that it involved a press defendant.

*2. Statements Concerning Public Interest.* ▮▮▮ PHA next contends that *Hofmann* does not apply because *Hofmann* involved matters of public interest which are afforded the highest constitutional protection. (*Hofmann, supra,* 202 Cal.App.3d at pp. 404-407.) PHA asserts that Procel's statements relate solely to her private concerns and are therefore not entitled to constitutional protection.[5]

Procel's challenged speech does not relate to discussion of governmental affairs which is at the heart of the First Amendment. (*Hofmann, supra,* 202 Cal.App.3d at pp. 406-407.) Nor is her speech merely commercial speech which is entitled to less protection under the First Amendment. (*Leonardini, supra,* 216 Cal.App.3d at p. 576, fn. 8.) ▮▮▮ "The test for identifying commercial speech is whether the publication in question may be said to do no more than 'propose a commercial transaction.' [Citations.]" (*Ibid.*) Procel's speech does not meet that test.

▮▮▮ In essence, Procel's statements concerned the quality of PHA's products and service and Procel's unhappiness with them. She also allegedly exhorted and attempted to persuade prospective customers not to purchase homes in Paradise Hills.

Courts have recognized the importance of the public's access to consumer information. "The growth of 'consumerism' in the United States is a matter of common knowledge. Members of the public have recognized their roles as consumers and through concerted activities, both private and public, have attempted to improve their relative positions vis-à-vis the supplies [*sic*] and manufacturers of consumer goods. They clearly have an interest in matters which affect their roles as consumers, and peaceful activities, such as plaintiffs', which inform them about such matters are protected by the First Amendment." (*Concerned Consumers League, supra,* 371 F.Supp. at p. 648.) As noted above, the court in *Concerned Consumers League* vacated an injunction which prohibited consumers from passing out leaflets in front of a store describing their dissatisfaction with the store's services. The court noted that unlike commercial speech, "informational picketing about business practices is protected. [Citation.]" (*Id.,* at p. 647.)

[5]The record suggests, although PHA's pleadings avoid the issue, and the trial court was not asked to rule on it, that a public controversy existed. The record contains many references to problems of other homeowners in the subdivision and the involvement of city officials in attempting to resolve those problems.

Discussing commercial speech, in *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817], the Supreme Court stated, "So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable. [Citations.]" (*Id.*, at p. 765 [48 L.Ed.2d at p. 360].) The court continued, "[E]ven if the First Amendment were thought to be primarily an instrument to enlighten public decisionmaking in a democracy, we could not say that the free flow of information does not serve that goal." (*Ibid.* [48 L.Ed.2d at pp. 360-361], fns. omitted.)

We conclude that the content of Procel's speech, to the extent it provides truthful information and opinions about PHA's business, is entitled to First Amendment protection.

*3. Privilege for Truthful Information.* Next, PHA contends that *Hofmann* supports the proposition that a cause of action for intentional interference may be based on truthful statements of a defendant so long as the defendant has the motive to interfere with the plaintiff's prospective business interests. The *Hofmann* court did state, "California courts have entertained suits for interference with contract or prospective economic advantage without inquiring into either the kind of statements the defendant made or the possibility that the First Amendment might limit the ability to maintain the causes of action. [Citations.]" (*Hofmann, supra,* 202 Cal.App.3d at p. 402.) In context, however, this statement was made in a review of prior case law *before* the changes announced in the *Blatty* decision. The actual holding of the *Hofmann* court is directly contrary to PHA's position.[6]

*4. Protection for Picketing Activities.* ▮▮▮ Citing only a 1950 decision of the United States Supreme Court, PHA contends that Procel's picketing activities, as distinguished from her speech, are constitutionally unprotected. This position ignores more recent cases which conclude that peaceful picketing is a form of protected expression. "It is established that peaceful picketing or handbilling 'carried on in a location open generally to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment.' [Citations.]" (*In re Lane* (1969) 71 Cal.2d 872, 874 [79 Cal.Rptr. 729, 457 P.2d 561].) The court in *Lane* held

[6]In an analogous context, a court has recognized that a cause of action for intentional interference with prospective economic advantage could not be based solely on the defendant's malicious motive when the defendant exercised the constitutional right to petition the government. (*Matossian* v. *Fahmie* (1980) 101 Cal.App.3d 128, 136-137 [161 Cal.Rptr. 532].)

that this right included the right to enter a private sidewalk open for the public's use in patronizing a business establishment. (*Id.*, at p. 878.)

▮▮▮ Although ultimate resolution of the issues must await determination by the trier of fact, we have serious doubts as to whether PHA could succeed on the merits of its claims. We conclude that neither the likelihood of success on the merits nor the balancing of hardships supports the issuance of the preliminary injunction.

*5. Terms of Injunction.* ▮▮▮ The injunction forbids Procel from communicating to members of the public "any form of conclusion, assumption, presumption, or generalization, regarding PHA's business, the Paradise Hills Subdivision, or homes for sale in Phases 2 and 3. . . ." The injunction also forbids Procel from "[m]aking any statement or written communication, attributing to Phase 2 or 3 . . . any alleged defect or problem relating to construction or repair of any home in Phase 1."

These prohibitions relate directly to the content of Procel's speech. The prohibitions necessarily include protected speech insofar as they relate to speech based on truthful information and expression of honestly held opinions. These provisions of the injunction are therefore overbroad.

▮▮▮ The injunction also forbids Procel from "[p]reventing or hindering any person from visiting" PHA's sales office or model homes. On a proper showing, the court could appropriately enjoin Procel from physically impeding pedestrian or vehicular traffic. (*H-CHH Associates* v. *Citizens for Representative Government* (1987) 193 Cal.App.3d 1193, 1208 [238 Cal.Rptr. 841].) Likewise, on a proper showing, the court could appropriately enjoin Procel from creating a disturbance or harassing customers uninterested in her message. (*Ibid.*) However, the injunction as it presently exists does not distinguish between protected verbal persuasion and unprotected physical interference and harassment. If Procel's peaceful communication of true information and sincerely held opinions caused a person not to visit the sales office, the injunction would be violated. Such an interpretation of the injunction would infringe on Procel's First Amendment right to communicate her views. (See *Smith* v. *Silvey* (1983) 149 Cal.App.3d 400, 406-407 [197 Cal.Rptr. 15].) The injunction is impermissibly overbroad.

▮▮▮ Next, the injunction prohibits Procel from entering PHA's sales office. An injunction may issue " 'against past acts only if there is evidence that they will probably recur.' [Citation.]" (*Rosicrucian Fellow* v. *Rosicrucian Etc. Ch.* (1952) 39 Cal.2d 121, 144 [245 P.2d 481].) The record contains no evidence that Procel ever entered the sales office or intended to do so; thus,

there was no basis for this provision of the injunction. (*Hannah* v. *Pogue* (1944) 23 Cal.2d 849, 858 [147 P.2d 572].)

 Finally, the injunction prohibits Procel from being present within 150 feet of the sales office except for lawful use of public property for ingress or egress. On a showing that Procel entered private property not open for public access, an injunction against such conduct would be appropriate. (See *Allred* v. *Shawley* (1991) 232 Cal.App.3d 1489, 1501-1502 [284 Cal.Rptr. 140].) However, the injunction as written is overbroad. The record does not support a finding that all areas within 150 feet of the sales office were private property closed to the public. (*Lane, supra,* 71 Cal.2d at p. 878.)

## DISPOSITION

The preliminary injunction is hereby reversed. Any preliminary or permanent injunction issued in this case in the future shall both clearly and narrowly define the scope of the proscribed activities, in accordance with the views expressed in this opinion. Appellant to recover costs on appeal.

Timlin, J., and McKinster, J., concurred.