Filed 6/25/15  Thompson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ERIN THOMPSON,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>W. B. COYLE et al.,<br><br>        Defendants and Appellants. | A134728<br><br>(San Francisco City & County<br>Super. Ct. No. CCH11572687) |

Defendants W.B. Coyle and David Gladstone appeal from restraining orders issued pursuant to Code of Civil Procedure section 527.6,[1] prohibiting them from harassing and requiring that they stay 100 yards away from, plaintiff Erin Thompson and her mother, Barbara Thompson.  They contend the restraining orders are not supported by substantial evidence, interfere with their First Amendment free speech rights, and are overbroad.  We affirm.[2]

Thompson was formerly an employee of Coyle, who was then a real estate broker and developer.  Gladstone worked with Coyle.  After Thompson left Coyle's employment to start her own real estate business, she sought restraining orders and injunctions against the two men, claiming they were waging an increasingly aggressive campaign of harassment and intimidation.  Thompson claimed the situation had gotten so bad, she was

---

[1]  All further statutory citations are to the Code of Civil Procedure unless otherwise indicated.

[2]  We conclude this matter is proper for disposition by memorandum opinion in accordance with California Rules of Court, standard 8.1.

1

fearful of her personal safety. The court issued temporary restraining orders on October 12, 2011, and reissued them when Thompson encountered difficulties serving Coyle.

The court subsequently held a full hearing on Thompson's petition for injunctive relief on December 16. At the conclusion of the hearing, the court granted the petition, finding by clear and convincing evidence that defendants' conduct constituted unlawful harassment under section 527.6. The court accordingly issued injunctions on Judicial Council Form, prohibiting defendants from coming within 100 yards of Thompson, her mother, or real estate open houses Thompson holds. As to Coyle, the court subsequently modified the injunction to allow closer contact for "litigation-related activities" in lawsuits involving Thompson and Coyle.

Defendants filed notices of appeal on February 14, 2012. A lengthy delay in the appellate process then ensued due to defendants' egregious delays in securing a settled statement in lieu of a reporter's transcript of the December 16, 2011, merits hearing on Thompson's petition. The settled statement was finally filed with this court on March 27, 2014. Thompson filed her respondent's brief in August 2014; defendants filed no closing brief.

*Substantial Evidence*

When the court issued the injunctions in December 2011, section 527.6 provided in relevant part:

> "(b) For purposes of this section, 'harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff.
>
> "As used in this subdivision:
>
> "(1) 'Unlawful violence' is any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but shall not include lawful acts of self-defense or defense of others.

2

"(2) 'Credible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose.

"(3) 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, fax, or computer e-mail. Constitutionally protected activity is not included within the meaning of 'course of conduct.'
[¶] . . .

"(d) . . . At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment. An injunction issued pursuant to this section shall have a duration of not more than three years. . . ." (Former § 527.6.)

"The appropriate test on appeal is whether the findings (express and implied)" that support the issuance of an injunction "are justified by substantial evidence in the record." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188 (*R.D.*); *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137–1138 [section 527.6 injunctions are reviewed to determine whether factual findings are supported by substantial evidence; trial court's determination of controverted facts will not be disturbed on appeal].) "But whether the facts, when construed most favorably in [the victim's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review." (*R.D.*, at p. 188.)

While defendants contend Thompson failed to present any clear and convincing evidence of harassment, that is not the case. In her declaration in support of her petition, Thompson testified she became increasingly concerned about Coyle's business practices, which she viewed as abusive and dishonest. When she indicated she intended to leave the company, Coyle would comment he would not "allow" her to leave. In April 2011, she finally decided to accept an opportunity to go into business with a former client.

3

After four months of attempting to negotiate an amicable parting of the ways, Thompson left in August in the face of Coyle's bullying and coercion. During this time, Coyle's continuing threats that he would not "allow" her to leave and increasingly erratic behavior began to frighten her. When Thompson announced she was leaving, Coyle screamed at her, " 'I'm going to inflict a lot of pain on you if you leave without an agreement . . . .' " He told her, " 'I interpret your actions as a declaration of war,'" and threatened, " 'I'm going to make you suffer,' " " 'You will be sorry,' " and "You know how crazy I am.' " He also sent abusive text messages, saying for example, "[t]here will be a lot of pain and scaring in the process" of Thompson's leaving, and "U have made an enemy u will regret."

Coyle and Gladstone then did exactly what Coyle had threatened—embarked on a campaign to intimidate Thompson. Beginning on September 18, and every Sunday and Tuesday thereafter until the restraining order issued, Coyle and Gladstone appeared just outside Thompson's open houses. The first time, Coyle threatened, " 'I'm going to make you feel pain. I'm going to make you suffer.' "

On subsequent dates, Coyle arranged for day laborers to loiter outside the open houses, engaging in "catcalls," whistles, and hooting and yelling. They also stared at Thompson. Gladstone, in turn, started using a bullhorn/megaphone which blared a recording of Coyle's voice saying, "Erin Thompson is a thief!" Gladstone played it anytime anyone walked by the open houses. Then, the day laborers started holding a sign also accusing Thompson of being a thief, while Gladstone sat in a truck parked across the street. At one point Thompson's mother overheard Gladstone talking a cell phone and saying, " 'Yeah, it's working. She's really scared!' " At a subsequent open house, Gladstone appeared on the sidewalk along with one of the day laborers and threatened Thompson, " 'I'm gonna get you. You're gonna be sorry.' " At another, he threatened, " 'We're gonna get you.' " Even after he was served with the temporary restraining

4

order, Gladstone continued to follow Thompson to her open houses and to threaten her. Thompson, who was alone at her open houses, testified she felt intimidated and afraid.

In the face of Thompson's and her mother's testimony, which the court credited, Coyle's and Gladstone's substantial evidence challenge and claim this was a mere "business dispute" is meritless. Even if their campaign against Thompson arose from a "business dispute," it does not change the fact that their *conduct* fell well within the definition of "harassment" actionable under section 527.6. Indeed, their conduct is a classic example of the kind of harassing "course of conduct" this statute is designed to protect against—repeated threats and acts of intimidation directed at an individual, which seriously annoys or alarms him or her and causes substantial emotional distress, as it would to any reasonable person. (*See Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1413–1415 (*Brekke*) [three "vile and vitriolic letters" to girlfriend sent with intent that mother see them].)

Nor do the restraining orders violate Coyle's and Gladstone's First Amendment rights. The orders do not mention or explicitly prohibit them from engaging in any particular form of speech with respect to Thompson—including the sorts of threats and intimidation which she complained in her petition. They do not mention or prohibit Coyle and Gladstone from making statements on any subject or of any content, as long as they do so at a distance, and the statements' contents do not constitute illegal harassment within the meaning of section 527.6. Indeed, Thompson made clear that she was not asking for any content-based relief, and wanted only that defendants be kept away from her. The restraining orders thus cannot be accurately characterized as content-based prohibitions on speech. (*R.D., supra,* 202 Cal.App.4th at p. 191.)

Coyle and Gladstone were not engaged in "peaceful picketing," and their reliance on *Paradise Hills Associates v. Procel* (1991) 235 Cal.App.3d 1528,[3] is misplaced. In

---

[3] Disapproved on other grounds by *Kowis v. Howard* (1992) 3 Cal.4th 888, 898.

that case, the unhappy purchaser of a new home posted signs in her yard complaining about the developer and on two weekends passed out leaflets in front of the model homes and spoke to prospective buyers trying to discourage them from buying homes. The developer sought and was granted a preliminary injunction. The injunction was not issued under section 527.6, but rather, as preliminary relief in a lawsuit for interference with business interests. Reviewing the traditional balancing factors, the Court of Appeal reversed on the ground the content based preliminary injunction unduly interfered with the defendant's speech rights, which were not overridden by any other factors. (*Paradise Hills Associates v. Procel*, at pp. 1542–1547.) The circumstances in the instant case are entirely different.

There likewise is no merit to defendants assertion the restraining orders are unconstitutionally "overbroad" because of the 100-yard stay-away from Thompson and her mother, including from all of Thompson's "open houses." Defendants complain they would need to "monitor" Thompson's open houses and determine where they are in order to comply, and they might unintentionally violate the order. This is a specious argument. Such stay-away orders are entirely permissible, and given the circumstances of this case, entirely appropriate. (See *R.D., supra,* 202 Cal.App.4th at p. 191 [100-yard stay-away order]; *Brekke, supra*, 125 Cal.App.4th at p. 1404 [100-yard stay-away order].)

***Costs and Attorney Fees***

Thompson asks for an award of costs, including attorney fees, on appeal pursuant to section 527.6, subdivision (r). Given the complete lack of merit to Coyle and Gladstone's appeal, we exercise our discretion and award such costs and fees. Assuming Thompson timely files a memorandum of costs and motion for attorney fees, the trial court is to determine the amount of recoverable costs and reasonable attorney fees incurred on appeal and award such costs and fees, as well as any recoverable costs and attorney fees incurred on remand in seeking such costs and fees.

**DISPOSITION**

The restraining orders issued December 16, 2011, are affirmed. Respondent is entitled to recover costs, including reasonable attorney fees, on appeal. The amount of recoverable costs and reasonable fees on appeal, including the costs and fees incurred on remand in seeking such costs and fees, is left for determination by the trial court.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.