FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8:40

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFFERY AND RENEE KRUGER, a/k/a Zillow.com user "pugetsoundcruiser," and the marital community comprised thereof; and PACIFIC COAST CONSTRUCTION GROUP, INC., a Washington corporation,<br><br>          Appellants,<br><br>v.<br><br>JEFF DANIEL,<br><br>          Respondent. | No. 43155-6-II<br><br><br>UNPUBLISHED OPINION |

BJORGEN, J. — Jeffery and Renee Kruger[1] appeal the denial of their special motion under the anti-SLAPP statute[2] to strike the claim against them by Jeff Daniel. The Krugers argue that the trial court erred in dismissing the special motion because (1) Kruger's posting was about a matter of public concern; and (2) Daniel did not show a probability of prevailing on his defamation claim, his unfair or deceptive practice claim, or his tortious interference claim. We hold that Kruger's posting was a matter of public concern under the anti-SLAPP statute. Therefore, we vacate the trial court's denial of the Krugers' motion to dismiss, and we remand for consideration of whether Daniel establishes a probability of prevailing by clear and convincing evidence.

---

[1] References to "Kruger" are to Jeffery Kruger.

[2] RCW 4.24.525, the Limiting Strategic Law Suits Against Public Participation Act.

## FACTS

### I. KRUGER'S INTERNET POSTING

Kruger owns and operates Pacific Coast Construction Group Inc., a real estate development and home building company in Washington. Daniel is a Washington real estate agent. In 2009 Daniel acted as listing and selling agent for Kruger, selling three of Kruger's homes. Daniel was not an exclusive agent for Kruger; he also represented other homebuilders. In the spring of 2010, Kruger demanded that Daniel stop representing other sellers of new homes. As a result of this demand, Kruger and Daniel terminated their business relationship. Later that fall, Kruger contacted Daniel seeking to resume Daniel's representation, but Daniel declined.

In 2011 Kruger posted a review of Daniel on the Zillow.com web site.[3] Using the user name "pugetsoundcruiser," Kruger stated on Daniel's profile page:

> Will never recommend.
> Showed home in 2011 in Ocean Shores, WA
> . . .
> This is another Ocean Shores agent that will really push you to buy one of his own listings. He will find something negative to say about other listings in hope that as the "expert" the clients will listen and not consider the listing[.]
> Jeff Daniel said some horrible things about other builders whose homes he didn't list. He would point out the smallest of flaws and say it was indicitive [sic] of the

---

[3] Zillow.com is a commercial web site that provides consumers with a variety of real estate information. The web site also includes sections for finding and reviewing a real estate agent. The web site describes itself in the following terms:

> Zillow is a home and real estate marketplace dedicated to helping homeowners, home buyers, sellers, renters, real estate agents, mortgage professionals, landlords and property managers find and share vital information about homes, real estate, mortgages, and home improvement. We are transforming the way consumers make home-related decisions and connect with professionals.

http://www.zillow.com/corp/About.htm (last visited Sept. 5, 2010.

quality of that builder and say that we should just turn around and leave. When I pointed out some of the same flaws in some of his listings he would just pooh pooh it and say that it can be easily fixed. He never said it was in any way indicitive [sic] of the quality of that home. He readily boasts about being the highest producting [sic] agent in the small area. I am surprised that so many people fall for his obvious ploys. I would not reccomend [sic] anyone that wants an honest agent that places their needs first work with Jeff Daniel.

Clerk's Papers (CP) at 3.

The posting was viewable for several days until another real estate agent saw the posting and contacted Daniel. Daniel contacted Zillow.com, and the web site removed the post.

## II. PROCEDURE

After filing a "John Doe" lawsuit, Daniel learned through a discovery request that Kruger had written the post. Daniel filed an amended complaint against the Krugers, alleging defamation per se, unfair competition, and intentional interference with business relationships.

The Krugers filed a special motion to strike the claim under the anti-SLAPP statute. The trial court denied the motion, stating that the internet posting "does not pertain to a matter of public concern, but appears to be a personal dispute as a result of a failed business relationship between the parties." CP at 26. Nonetheless, the trial court also found that the Krugers' dismissal motion was not frivolous and did not award attorney fees or penalties. The Krugers appeal.

## ANALYSIS

The Krugers argue that the trial court erred by dismissing their motion under the anti-SLAPP statute because (1) Kruger's posting was about a matter of public concern and (2) Daniel did not show a probability of prevailing on his defamation claim. Daniel responds that the anti-SLAPP statute does not protect Kruger's posting because it: (1) involved a private dispute; (2)

3

involved a competitor's statement about another business; and (3) did not constitute a matter of public concern. We agree with the Krugers that the posting involves a matter of public concern. Because we remand for the trial court to consider whether Daniel can establish a probability of prevailing, we do not consider the Krugers' additional arguments.

1.      The Anti-SLAPP Statute

The legislature enacted Washington's anti-SLAPP Act to prevent a chill on the valid exercise of constitutional free speech rights brought about by lawsuits. LAWS OF 2010, ch. 118, § 1(a). The legislature found that "[i]t is in the public interest for citizens to participate in matters of public concern and provide information" on public issues that affect them "without fear of reprisal through abuse of the judicial process." LAWS OF 2010, ch. 118, § 1(d).

To serve that purpose, the law provides, in relevant part, that "[a] party may bring a special motion to strike any claim that is based on an action involving public participation" as defined in the statute. RCW 4.24.525(4)(a). An action involving public participation includes "[a]ny . . . written statement . . . in a place open to the public or a public forum in connection with an issue of public concern" and "other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern." RCW 4.24.525(2)(d), (e).

Analysis of a special motion under the anti-SLAPP statute requires a two-step process. "A defendant who files an anti-SLAPP motion bears the threshold burden of showing that the complaint arises from protected activity." *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1110 (W.D. Wash., 2010). To meet this burden, the moving party must show "by a preponderance of the evidence that the claim is based on an action 'involving public participation

4

and petition' as defined in RCW 4.24.525(2)." *Am. Traffic Solutions, Inc. v. City of Bellingham*, 163 Wn. App. 427, 434, 260 P.3d 245 (2011), *review denied*, 173 Wn.2d 1029, 274 P.3d 1039 (2012). The core of that definition, as applied to this appeal, is a statement "in a place open to the public or a public forum in connection with an issue of public concern." RCW 4.24.525(2)(d). If the moving party does not make that showing, the special motion is denied. If the moving party makes the showing, the burden shifts to the plaintiff to establish a probability of prevailing on the claim by clear and convincing evidence. *Aronson*, 738 F. Supp. 2d at 1110; *Am. Traffic Solutions*, 163 Wn. App. at 434; RCW 4.24.525(4)(b). If the plaintiff meets this burden, the court will deny the special motion to strike his claim. RCW 4.24.525(4)(b).

In making these determinations under RCW 4.24.525(4)(b), the court considers pleadings and supporting and opposing affidavits stating the basis of the liability or defense. RCW 4.24.525(4)(c).[4] We review de novo trial court decisions based on affidavits and documents. *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989).

An anti-SLAPP law protects defendants from trial itself rather than merely protecting defendants from liability. *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir.2003) (addressing

---

[4] Relying on California case law, the parties agree that this process is identical to that of summary judgment. "'The court cannot weigh the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment.'" *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 679, 105 Cal. Rptr. 3d 98 (2010) (quoting *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1346, 63 Cal. Rptr. 3d 798 (2007)). "'[W]e accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.'" *Grewal v. Jammu*, 191 Cal. App. 4th 977, 989, 119 Cal. Rptr. 3d 835 (2011) (quoting *Overstock.com v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699-700, 61 Cal. Rptr. 3d 29 (2007)).

California's anti SLAPP statute).[5] In passing the law, the Washington legislature noted its concern with the chilling effect of potential litigation on the valid exercise of the constitutional right of freedom of speech. LAWS OF 2010, ch. 118, § 1(a). The statute accordingly awards attorney fees and costs, plus $10,000 to a defendant who prevails on an anti-SLAPP motion. RCW 4.24.525(6)(a)(i), (ii). If the court finds that the anti-SLAPP motion to strike was frivolous or brought solely to cause unnecessary delay, the court shall award costs, attorney fees, and $10,000 to the opposing party. RCW 4.24.525(6)(b)(i), (ii).

2.      Public Forum and Concern

Turning to the first step of the analysis, whether Kruger's statement was in a place open to the public or a public forum in connection with an issue of public concern, we apply and construe the Act liberally to effectuate its general purpose of protecting participants in public controversies from an abusive use of litigation. *Aronson*, 738 F. Supp. 2d at 1111. "Any conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern is subject to the protections of the statute." *Aronson*, 738 F. Supp. 2d at 1111. That Daniel is not a public figure is not critical. While speech about a public figure, standing alone, may satisfy the public concern element of the Act, speech about a private individual satisfies this requirement "so long as there is a direct connection to discussion of a topic of widespread public interest." *Aronson*, 738 F. Supp. 2d at 1111.

---

[5] Although Washington case law interpreting our anti-SLAPP Act is sparse, Washington's anti-SLAPP Act mirrors the California anti-SLAPP Act. Aronson, 738 F. Supp. 2d at 1110; *compare* CAL CIV. PROC. CODE § 425.16 (West 2011) (California's anti-SLAPP statute) with RCW 4.24.525 (Washington's anti-SLAPP statute. Therefore, we rely on California authority in interpreting the Washington statute.

The California Supreme Court has held that "'[w]eb sites accessible to the public . . . are "public forums" for purposes of the anti-SLAPP statute.'" *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039, 72 Cal. Rptr. 3d 210 (2008) (quoting *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41, n.4, 51 Cal. Rptr. 3d 55, 146 P.3d 510 (2006)). Zillow.com is a participatory web site where the public may read and write reviews of an individual real estate on that agent's profile page. California courts have analogized this type of participatory web site to an electronic public bulletin board. *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146, 147 Cal. Rptr. 3d 496 (2012); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897, 17 Cal. Rptr. 3d 497 (2004). As the *Wilbanks* court held, "It is public because it posts statements that can be read by anyone who is interested, and because others who choose to do so can post a message through the same medium that interested persons can read." *Wilbanks*, 121 Cal. App. 4th at 897.

Additionally, Zillow.com provides information to the general public intended to help the public buy and sell real estate or choose a real estate agent. The public has a significant interest in the conduct of real estate professionals, who often conduct their business in the capacity of a fiduciary. *See* Titles 18.85, .86 RCW; *Nuttall v. Dowell*, 31 Wn. App. 98, 108, 639 P.2d 832 (1982). Here, the profile pages on the Zillow.com web site, like a public bulletin board, constitute a medium for public discussion of significant real estate issues reaching a large community. RCW 4.24.525(2)(d).

The California courts have generally viewed consumer information as a matter of public interest, particularly if it affects a large number of persons. *Wilbanks*, 121 Cal. App. 4th at 898-99.

> Courts have recognized the importance of the public's access to consumer information. "The growth of 'consumerism' in the United States is a matter of

7

> common knowledge. Members of the public have recognized their roles as consumers and through concerted activities, both private and public, have attempted to improve their . . . positions vis-à-vis the supplies [sic] and manufacturers of consumer goods. They clearly have an interest in matters which affect their roles as consumers, and peaceful activities, such as plaintiffs', which inform them about such matters are protected by the First Amendment."

*Wilbanks*, 121 Cal. App. 4th at 899 (quoting *Paradise Hills Assocs.* v. *Procel*, 235 Cal. App. 3d 1528, 1544, 1 Cal. Rptr. 2d 514 (1991)). Here, Kruger's statement was a warning not to use Daniel's services. As information ostensibly provided to aid consumers choosing real estate agents, Kruger's statement directly connected to an issue of public concern under these California cases.

Daniel argues that California amended its anti-SLAPP statute, making it inapplicable to competitors' statements about other businesses, and that we should likewise prevent businesses from abusing the statute in that way. We agree with Daniel that the Act can be abused and that shielding unfounded attacks by competitors can be a prime vehicle for that abuse. Our legislature, however, has not amended our anti-SLAPP Act to provide the exception afforded in California. Without that exception, Kruger's alleged status as a competitor or jilted business partner does not diminish the public concern and interest that lies in his statements. Kruger's relationship with Daniel may well play a role in the second step of the analysis, the probability of prevailing; but under the statute it does not affect the first step, the public concern inhering in the statements.

As noted above, statements about a private individual may satisfy the first step of the analysis under the statute as long as there is a direct connection to a discussion of a topic of widespread public interest. *Aronson*, 738 F. Supp. 2d at 1111. Although one may dispute whether Kruger's statement itself was of "widespread" public interest, the topic of real estate

services most certainly is. Guided by the California cases discussed above and our Legislature's direction to construe the Act liberally to protect participants in public controversies from an abusive use of litigation, we conclude that Kruger's statement was made in a public forum in connection with an issue of public concern. Thus, the trial court erred in ruling that he failed to carry the burden of the first step under the anti-SLAPP Act.

With the first step of the analysis satisfied, the burden shifts to Daniel to show, by clear and convincing evidence, a probability of prevailing on his defamation claim. *Am. Traffic Solutions*, 163 Wn. App. at 434; RCW 4.24.525(4)(b). If Daniel meets this burden, the Krugers' motion to strike Daniel's claim must be denied. RCW 4.24.525(4)(b). We remand to the trial court to make this determination.

## ATTORNEY FEES

The Krugers argue that the trial court erred by failing to impose attorney fees and further asks that we award them appellate attorney fees. Daniel also requests appellate attorney fees, arguing that under RAP 18.9 and the anti-SLAPP statute, the Krugers' appeal is frivolous. We do not award attorney fees at this time because the trial court has not fully decided the anti-SLAPP motion.

## CONCLUSION

We hold that Kruger's posting was a matter of public concern under the anti-SLAPP statute. Therefore, we vacate the trial court's denial of the Krugers' motion to dismiss, and we remand for consideration of the second step under the anti-SLAPP statute: whether Daniel establishes a probability of prevailing. The trial court shall make any needed attorney fee determinations after the prevailing party is resolved.

No. 43155-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, P.J.

PENOYAR, J.